UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NISAR AHMAD ARYUBI,

                                 Petitioner,              ORDER

-vs-
                                                              26-CV-6070-MAV

PHILIP RHONEY, *Deputy Field Office Director,
Buffalo Field Office, U.S. Immigration and Customs
Enforcement*; et al.,

                                Respondents.
_____

## INTRODUCTION

Petitioner Nisar Ahmad Aryubi, a national and citizen of Afghanistan who entered the United States on or about February 13, 2024, was detained on December 16, 2025, and was transferred to the Buffalo Federal Detention Facility ("BFDF") in the custody of U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1 ¶¶ 1–4. He has filed this action pursuant to 28 U.S.C. § 2241, arguing that his continued detention without a bond hearing is a violation of 8 U.S.C. § 1226(a), as well as his due process rights under the Constitution. *Id.* ¶¶ 48–55.

For the reasons that follow, the petition is granted to the extent that the Court finds Petitioner is detained pursuant to 8 U.S.C. § 1226(a), and is therefore entitled to a bond hearing at the outset of detention as established by existing federal regulations. His argument to the contrary notwithstanding, the Court finds no Constitutional violation in Petitioner bearing the burden of proof at the initial bond hearing to demonstrate to the satisfaction of the Immigration Judge that he is not a danger to the community or a flight risk.

1

## BACKGROUND

Petitioner is a national and citizen of Afghanistan who entered the United States without inspection on or about February 13, 2024. ECF No. 1 ¶ 25. He was apprehended by immigration officials shortly after entry, and on February 14, 2024 was served with an arrest warrant indicating that he was "liable to be taken into custody as authorized by section 236 of the Immigration and Nationality Act ['INA'],"  which is codified at 8 U.S.C. § 1226. ECF No. 1-4. That same day he received an "Order of Release on Recognizance" and a "Notice of Custody Determination" both of which also cited to section 236 of the INA as the source of authority for his arrest and detention. ECF No. 1-5. Petitioner's Notice to Appear indicated that he was charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), in that he is an alien present in the United States without being admitted or paroled. ECF No. 1-1. Petitioner does not indicate what he did upon his release, but he was again apprehended by immigration officials on December 16, 2026 near Champlain, New York. ECF No. 1 ¶ 28.

Petitioner filed the instant petition on January 19, 2026 seeking relief from Respondents' alleged violation of the INA, as well as the Due Process Clause of the United States Constitution. ECF No. 1. With respect to his claims under the INA, Petitioner maintains that his detention is governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2)(A) as Respondents maintain. *Id.* ¶ 58. This is significant, as § 1226(a) gives the Government discretion to release a detainee on bond during his removal proceedings, whereas § 1225(b)(2)(A) provides for mandatory detention. *Id.*

Among other things, Petitioner seeks his immediate release or, in the alternative, a "constitutionally sound" bond hearing before an Immigration Judge under § 1226(a). *Id.* In his reply papers, he also argues for a bond hearing before this Court. ECF No. 6.

On January 21, 2026, the Court directed Respondents to show cause why Petitioner's petition should not be granted. ECF No. 2. Respondents filed their response on January 22, 2026, and Petitioner replied to that response on January 29. ECF Nos. 4, 6.

## JURISDICTION

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's authority to detain aliens, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to the alien's detention or removal.[1] *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia, Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). No such discretionary judgments, actions, or decisions are at issue here. *See, e.g., Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2–5 (W.D.N.Y. Nov. 26, 2025) (rejecting the jurisdictional defenses raised by Respondents regarding a petition involving similar issues, and explaining why 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) did not bar

---

[1] For instance, 8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Additionally, judicial review of removal orders is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

3

the district court's review of the petition).

## DISCUSSION

Although they express disagreement with the Court's prior rulings concerning similar challenges to the government policy or practice at issue in this case, Respondents acknowledge that "the common question of law between this case and those rulings, would control the result in this case should the Court adhere to its legal reasoning in those prior decisions." ECF No. 4 at 1. Specifically, Respondents cite this Court's decision in *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025), and concede that the Court's resolution of the question in *Da Cunha* controls the result in the instant case. ECF No. 4 at 3. In that regard, Respondents state that "[s]hould the Court decide that [Petitioner] is subject to detention under 8 U.S.C. § 1226, the appropriate remedy is to order a bond hearing with the burden of proof on [Petitioner] . . . ." *Id.* at 2.

In reply, Petitioner notes that Respondents concede that the principles of *Da Cunha* direct a finding that his detention is governed by 8 U.S.C. § 1226(a), and that he is entitled to a bond hearing. ECF No. 6 at 2. However, Petitioner maintains that the remedy suggested by Respondents is "not sufficient" because Respondents already determined that Petitioner was neither a flight risk nor a danger when they released him on his own recognizance in 2024. *Id.* Therefore, Petitioner believes the appropriate remedy is his immediate release, a bond hearing before this Court, or, "at a minimum," Respondents should be required to demonstrate to the Immigration Court by clear and convincing evidence that Petitioner's detention is necessary. *Id.*

Thus, to resolve the instant petition, the Court must first determine which statute governs Petitioner's detention, and – if it finds detention is governed by § 1226(a) – determine the appropriate remedy.

## I. The Statute Governing Petitioner's Detention

In *Mahmodi et al.* v. *Marich, et al.*, No. 25-CV-6762-MAV, 2026 WL 113473 (W.D.N.Y. Jan. 15, 2026), this Court summarized its holding in *Da Cunha*, and stated that "[g]iven Respondents' concession that the principles of *Da Cunha* control in the instant case, the Court finds that Petitioners are detained under 8 U.S.C. § 1226(a)." *Mahmodi*, 2026 WL 113473 at *2–3 (citing *Da Cunha*, 2025 WL 3280575 at *4–6). Accordingly, the Court also found the petitioners were entitled to an initial bond hearing "at the outset of detention" as established by existing federal regulations. *Id.*

Similarly, the Court here finds that, given Respondents' concession that the principles of *Da Cunha* control in the instant case, Petitioner is detained under 8 U.S.C. § 1226(a). He has been living in the United States since 2024, and there is no suggestion in the parties' papers that he was arrested while actively "seeking admission." *See, e.g., Mahmodi*, 2026 WL 113473 at *2–3 (noting that the petitioners in that case had been living and working in the United States since 2024, and there was no suggestion in the papers that they were arrested while actively "seeking admission.").

## II. Petitioner's Remedy

The Court agrees with Petitioner that the statute governing his detention is 8 U.S.C. § 1226(a), but not with any of Petitioner's proposed remedies. To begin with,

Petitioner rightly notes that his release on recognizance involved a determination that he was not a flight risk or a danger to the community (ECF No. 6 at 5): under the regulations, "any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [§ 1226(c)], under the conditions at [§ 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). However, Petitioner neglects to point out that the regulations also provide that "[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [authorized immigration officials], in which event the alien may be taken into physical custody and detained." *Id.* at § 236.1(c)(9). Based on these regulations, the Court is not persuaded that Petitioner's detention in December 2025 was a violation of either the INA or its implementing regulations.

Further, Petitioner has presented no factual allegations that persuade the Court that his arrest was a violation of due process, and, to the extent that the legal authorities Petitioner cites involve analogous relevant circumstances to those alleged by Petitioner, the Court respectfully disagrees with the conclusion that the most appropriate remedies are immediate release or a bond hearing before this Court.[2]

---

[2] The Court does not find that the circumstances of all of the authorities cited by Petitioner are analogous to the circumstances here. For instance, the allegations regarding the conditions of confinement in *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025) were far more detailed and egregious than those of Petitioner's here, and the petitioner in *Alfaro Herrera v. Baltazar*, No. 1:25-CV-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026) had Special Immigrant Juvenile status which afforded the petitioner significant removability protections and a "host" of other procedural

6

Therefore, Petitioner is entitled to a bond hearing "at the outset of detention" as established by existing federal regulations. *Da Cunha*, 2025 WL 3280575 at *7; 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

In *Mahmodi*, the Court examined the Second Circuit's seminal case of *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) and concluded that the allocation of the burden of proof at an alien's initial bond hearing requires the application of the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to the circumstances of the particular case.[3] After reviewing the *Mathews* analysis in Petitioner's reply papers (ECF No. 6 at 2–4), and performing its own analysis of the *Mathews* factors based on the circumstances alleged in the instant petition and reply papers, the Court finds that Petitioner has failed to demonstrate that it is a due process violation to place the burden on him at the initial bond hearing to show that he is neither a flight risk nor a danger to the community and therefore merits release on bond.

### i. First Mathews Factor: Private Interest Affected

With respect to the first factor of the *Mathews* test, the private interest that will be affected, the Court finds that Petitioner's affected private interest is "the most significant liberty interest there is—the interest in being free from imprisonment."

---

rights. *Id.* at *2–3. Additionally, the Court is not persuaded by Petitioner's argument that he should be awarded the anticipatory relief of a bond hearing before this Court on the grounds that it will help avoid "a wasteful round of enforcement proceedings." ECF No. 6 at 8. Moreover, Petitioner arguably waived this request for a bond hearing before the Court because he did not suggest it until his reply papers. *See, e.g., Pineda v. Shanahan*, 258 F. Supp. 3d 372, 380 n.11 (S.D.N.Y. 2017) (noting that habeas petitioner waived argument by failing to raise it until his reply).

[3] The Court was careful to note that "[n]othing in this conclusion . . . should be read to restrict an alien's opportunity to raise as-applied challenges to detention under 8 U.S.C. § 1226(a) within the limits of the Court's habeas jurisdiction." *Mahmodi*, 2026 WL 113473 at *7.

7

*Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Thus, this factor weighs in favor of Petitioner.

Nevertheless, "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor . . . ." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022). For one, the Supreme Court has expressed "a longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings . . . ." *Demore*, 538 U.S. at 526. Further, Petitioner here was detained at the Buffalo Federal Detention Facility for only approximately one month at the time he filed his petition. *See Velasco Lopez*, 978 F.3d at 852 (citing *Demore*, 538 U.S. at 529) ("the longer the duration of incarceration, the greater the deprivation . . . . where the Supreme Court has upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention."). Lastly, Petitioner's detention has a "definite termination point." That is, by statute, Petitioner may only be detained under § 1226(a) pending a decision on whether he is to be removed from the United States. *See, e.g., Demore,* 538 U.S. at 528 (finding it a significant due process consideration that detention under § 1226 has a "definite termination point").

While the Court does not minimize the importance and fundamental nature of the individual's right to liberty, the Court finds that due to the shorter length of his detention at the date of filing of his petition, and the absence of any allegations regarding the conditions of confinement, the first factor weighs in Petitioner's favor

to a lesser extent than in the petitioner's in *Velasco Lopez*.

### ii. Second Mathews Factor: Risk of Erroneous Deprivation

With respect to the second factor of the *Mathews* test, the risk of erroneous deprivation, the Court finds this factor to be neutral at this stage of the proceedings.

The Second Circuit found in *Velasco Lopez* that "the procedures underpinning [the petitioner]'s lengthy incarceration markedly increased the risk of error." *Velasco Lopez*, 978 F.3d at 852. In the instant case, however, Petitioner has not made a showing of any pertinent similarities of his circumstances with that of the petitioner in *Velasco Lopez*, and there is no evidence before the Court to suggest that the ample process outlined in the relevant regulations is intrinsically deficient. *See Mahmodi*, 2026 WL 113473, at *4–5 (summarizing the relevant regulations). To begin with, once Respondents comply with the instant order, Petitioner will have received an initial bond hearing within approximately two months of his initial detention, more than one month earlier than the initial bond hearing in *Velasco Lopez*. *See also Rodriguez Diaz*, 53 F.4th at 1207 (finding the petitioner's reception of an initial bond hearing within two months after he was detained a relevant consideration "diminish[ing]" the weight given to the petitioner's liberty interest). Further, it does not appear from the petition that Petitioner has a criminal record that would implicate the alleged informational disadvantage caused by the "substantial resources" Respondents may utilize to discover information. ECF No. 1 ¶ 27; *see also, e.g., Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022) (finding the second factor tips in the Government's favor, in part, because aliens should know much more about their history, family, and

9

employment than the Government, and because they have the opportunity to retain counsel to represent them before the Immigration Judge).

Thus, Petitioner, who may be represented by counsel at his initial bond hearing, has not demonstrated that he will be at an informational disadvantage to Respondents at this point in the proceedings, or that other circumstances are present that may create a marked increase in the risk of error.

### iii. Third Mathews Factor: Government's Interest in Detention

As to the third and final factor of the *Mathews* test, the government's interest in detaining Petitioner, "the Attorney General's discretion to detain individuals under 8 [ ] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose . . . [such as] . . . ensuring the appearance of aliens at future immigration proceedings . . . ." *Velasco Lopez*, 978 F.3d at 854. "The importance of these interests is well-established and not disputed." *Id.*

In *Velasco Lopez,* the Second Circuit stated that "[w]hile the Government's interest may have initially outweighed short-term deprivation of [the petitioner]'s liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Id.* at 855. Nevertheless, it declined "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." *Id.* at 855 n. 13. The Court does not read the Second Circuit's conclusion in this regard to suggest that the third *Mathews* factor must always weigh in favor of the petitioner. Rather, the Court reads *Velasco Lopez* "to suggest that the inverse [of the *Velasco Lopez* petitioner's case] is also true: namely,

that it may not be a violation of due process for an alien to bear the burden of proof at a hearing that takes place shortly after their initial detention . . . and where a petition is filed after a relatively brief period." *Raspoutny v. Decker*, 708 F. Supp. 3d 371, 383 (S.D.N.Y. 2023) (quoting *Huanga v. Decker*, 599 F. Supp. 3d 131, 139 (S.D.N.Y. 2022)).

That is the case here. The petition was filed approximately one month after Petitioner's arrest, and his initial bond hearing, following Respondents' compliance with this order, will occur within approximately two months of Petitioner's detention. Consequently, the Court finds that the third factor weighs in favor of the Respondents.

Having weighed all three factors, determining that the first weighs slightly in favor of Petitioner, the second is neutral, and the third weighs in favor of Respondents, the Court finds that Petitioner has failed to demonstrate that the Due Process Clause requires Respondents to bear the burden at the initial bond hearing to show by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. He has further failed to demonstrate that it is a due process violation to place the burden on him at the initial bond hearing "'to show to the satisfaction of the Immigration Judge that he'" is neither a flight risk nor a danger to the community and therefore merits release on bond. *See Mahmodi*, 2026 WL 113473, at *5 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

## CONCLUSION

Accordingly, Petitioner's application for habeas relief [ECF No. 1] is

11

GRANTED to the extent that the Court finds that he is detained under 8 U.S.C. § 1226(a), and therefore that Petitioner is entitled to an initial bond hearing under the relevant regulations. It is hereby,

ORDERED that Respondents shall hold an individualized bond hearing for Petitioner within ten (10) days of the date of this Order; and it is further

ORDERED that if Respondents fail to hold a bond hearing for Petitioner within ten (10) days, Petitioner shall be released from custody; and it is further

ORDERED that Respondents shall file a status report no later than seventeen (17) days from the date of this order confirming that Petitioner has either been granted a bond hearing within ten (10) days or released from custody in compliance with this Order; and it is further

ORDERED that, because the instant Order resolves this action, an evidentiary hearing is not warranted and the restriction on Petitioner's transfer outside of the United States is lifted.

The Clerk of Court is directed to enter judgment in favor of Petitioner and close this case.

SO ORDERED.

Dated:      February __17__, 2026
            Rochester, New York

                                        ENTER:

                                        _/s/ Meredith Vacca_
                                        HON. MEREDITH A. VACCA
                                        United States District Judge